The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the court is now sitting. God save the United States and this Honorable Court. All right. Mr. Gladden, is it? Yes, it is. We'd be happy to hear from you. Thank you. May it please the court. This appeal raises three issues. Sequestration, the denial of a motion for a new trial, and what I will refer to as the ambiguous verdict 924C issue. I plan to begin with sequestration and the new trial, and then turn to the 9, the ambiguous verdict issue. The district court erred when it did not separate the cooperating co-defendant witnesses and order them all not to discuss their testimony. Sequestration was absolutely necessary in this case, because the cooperating co-defendant witnesses were self-interested. They were receiving extremely favorable plea bargains in exchange for their testimony. One co-defendant received as much as 73 years off of his sentence. Ms. Gladden, this is Judge Thacker. I have a question. Assuming the district court did err, how was your client prejudiced by the lack of sequestration, given that his attorney was able to cross-examine on witness collusion and also raised it in closing argument, not to mention the plethora of other evidence against your client? Yes, Your Honor. Cross-examination is a remedy when a sequestration violation occurs and is brought to the court's attention at trial. It is not a substitute for sequestration itself, which is the court's error that we're arguing here. But in this case, the evidence of possible violation of a sequestration order with respect to co-defendant Griffin emerged after trial and with another inmate reporting that he heard the co-defendants discussing their testimony, recounting the questions asked and their answers. So counsel was never able to cross-examine the co-defendants using that evidence to impeach them with it. Did counsel ask for an evidentiary hearing on that new evidence? Your Honor, the new evidence was brought to the court's attention and submitted as part of a motion for a new trial, and it was submitted pro se. So there was no explicit evidentiary hearing requested, but it is well established that pleadings from pro se litigants are to be construed liberally. And Mr. Ali did submit it as an attachment to a motion for a new trial. He also specifically cited Mr. Maggard's declaration and the federal rule of evidence 615 in arguing that he was prejudiced, that the co-defendants polluted against him. And that's at joint appendix 891 and 892. Given that federal rule of evidence 615 only applies to witnesses in a courtroom hearing, in a courtroom who are hearing one another's testimony, and that where you're talking about witness sequestration outside of court, it's subject to an abuse of discretion standard, I'm wondering how you could say the district court abused its discretion with respect to Mr. Griffin. The judge inquired whether Mr. Griffin could be sent away from the courthouse and sent back to jail. And when that offer was made to send Mr. Griffin back to jail, neither the government nor Griffin's counsel objected at all. But Ali's lawyer said, no, we might need him. So there was an offer that would have achieved complete sequestration, but you objected because you said you might need Mr. Griffin. So isn't it your fault that Mr. Griffin and the other witnesses weren't sequestered to bring this up at this rather late date? Your Honor, a few points. First, Mr. Griffin is only one of the four co-defendants. So certainly with respect to the other three, that issue would not be relevant. But second, Mr. Ali has a right, a Sixth Amendment right to present a defense, and at that juncture wasn't sure whether he would need to recall Mr. Griffin to fulfill that right. And he shouldn't be forced to choose between these two rights, Your Honor. Well, even if he was sent back to the jail, he could have been brought back in the event you felt you needed him for further cross-examination or for some other purpose, could he not? How far away is a jail from the courthouse? Yes, Your Honor, it could. But what we really have to remember here is that everyone agreed sequestration was necessary. The court agreed they ought to be sequestered. There was an unrebutted presumption of sequestration under the rule. This court has interpreted the hearing, the prohibition against hearing the testimony of witnesses inside the courtroom to include the learning of testimony outside of the courtroom. And what we really need to fully develop prejudice in this case is an evidentiary hearing. So at a minimum, we're asking that this court remand for an evidentiary hearing. And in analogous cases, when this type of new evidence has come forward after trial, that's exactly what courts have done. So in Mungro, for example, the new evidence was the same. Inmates who had submitted affidavits alleging that cooperating government witnesses had discussed their testimony at trial. And in that case, the court held a four-day evidentiary hearing where the inmates who had submitted affidavits testified, as did the government witnesses at issue. And then the court made lengthy credibility determinations about that new evidence in a long order. Here, at sentencing, the district court judge summarily denied the new trial motion, did not apply any of the five parts of the Chavis test, which governs new trial motions in this circuit. How do you know that? I mean, we review orders of district judges routinely denying motions to acquit at the end of the government's case, motions at the end of the case for judgments notwithstanding the verdict. And the judges routinely deny those. And the fact that you can raise it on appeal is sufficient, but there's no requirement that the judge give any kind of an opinion other than its order is there. Well, Your Honor, in the context of newly discovered evidence, courts make credibility determinations about the evidence in applying the test or in ruling on the request for a new trial. So, for example, in the Eighth Circuit in Engleman, the Eighth Circuit found that it was an abuse of discretion to not hold an evidentiary hearing. I'm talking about you. You are making a big point. The court didn't give all account for its denial of the motion. It didn't go through the various steps. And I'm just suggesting to you we don't know that. The court just simply denied the new trial motion and said denied. And it seems to me that's a routine way to handle that at trials. It's done daily because so many routine motions are made and we don't require a written opinion or a long explained opinion. That doesn't mean you can't raise all those points, and you have, and you have, and that's fair enough. Yes, Your Honor. I just want to clarify one thing. I'm not talking about a court's ruling at trial. I'm talking about the court's ruling at sentencing with respect to the motion for a new trial based on newly discovered evidence that was submitted and the court considered. So the lack of any findings… Well, the post-trial motion has to be a lot more robust, I would think. It seems to me at trial there was no evidence that anything material happened that changed the outcome. The court tried to accommodate the sequestration order. It, of course, excluded the witnesses from the courtroom, but it tried to divide the witnesses between holding cells. And, of course, Griffin in the afternoon went back to the jail, so they weren't there too long. But what the court was confronted with was a problem, and the court discussed it with counsel. But when you come for a new trial on newly discovered evidence, it seems to me then you have to show that the outcome might have been different. You have to show that there was prejudice to some material evidence at some important testimony. They colluded on some important testimony or something to say that there was an injustice in what actually happened. Sure, Your Honor. And just to address that, here's just an example of how one narrow fact, how tailored testimony on one narrow fact may have changed the outcome. So, for example, in Counts 2, 4, and 6, the government's theory for those 924C counts was aiding and abetting the use of a firearm in connection with a crime of violence. And so they had to show advanced knowledge, that Mr. Lee had advanced knowledge that a firearm would be used in connection with the robberies. Now, the co-defendants were the only source of evidence on that point. Had they testified inconsistently, the jury may have had a reason to doubt and may have acquitted on those 924C counts, which could have saved him 75 years in prison. Even just one would have been 25 years. So it could have been a huge deal. One of those witnesses said, I don't know if he had a gun, or I don't know if he knew about it. But another witness says, I knew he knew about it because I had a conversation with him. I mean, the idea that they don't all agree on extent of knowledge doesn't demonstrate a lot. It seems to me if there can be circumstances, I suppose, where they collude on evidence and make it up, but it's hard to figure that out here with these two affidavits, which are just generalized notions that they got together and talked about it in the holding cells. Well, that's exactly why we need an evidentiary hearing to find out what prejudice, if any, occurred. But, Your Honor, I'd like to turn to the 924C issue now. Can I just answer one more question, which is I want to come back to Judge Thacker's point because I think that's an important one. It is true that the co-defendants had the benefit of a favorable plea bargain, as you point out, and they were permitted, counsel was permitted to cross-examine them at length about the plea bargain and about the benefit that they were going to receive. And not only was there extensive cross-examination on the plea bargain and the benefit that they received under it, but there was cross-examination extensively on the very matter that you later wanted a new trial on, which was the possibility of collusion. And the district court was very generous of that, and I don't understand you to contend that your cross-examination or your ability to probe the possibility of collusion from these four defendants was curtailed in any way, was it? Well, Your Honor, counsel just didn't have the benefit of Mr. Maggard's evidence at that point, so he wasn't able to impeach the co-defendants with this. But he wasn't able to impeach the co-defendants with the evidence of possible tailored testimony. So I'd like to switch to the 924C issue. This court has already resolved the exact question in this case, which is what happens when there are multiple possible predicates for a Section 924C conviction and one of them does not qualify as a crime of violence. And the answer this court has told us is that you must vacate the conviction. So just last month in Rennion, this court held that when the jury was not asked to indicate on its verdict form which of two possible predicates was the basis of a 924C conviction, you must assume that either possible predicate could have been the basis for that conviction, and we must determine whether each predicate qualifies as a crime of violence. Did you object to the instruction on Hobbs Act conspiracy? Because that was the era here that Hobbs Act conspiracy is not a crime of violence. Did you object to that? No, Your Honor. So we're here on plain error? We are. And the Boykin case tells us exactly how to do the plain error analysis under the modified categorical approach. And in Boykin, the court faithfully applies modified categorical approach throughout all of the four prongs of the plain error analysis. It does not look to the facts of the case for any prompt. The court concludes in that case where the error was that the court looked to the pre-sentence report to conclude that two prior offenses had occurred on separate occasions. Well, as I understand it, and I think Judge Motz wrote a good opinion on Collins in the rehafe context, but an instructional error is not a structural error. This isn't even a constitutional error as far as I can tell. But it's very plain that an instructional error is not constitutional, subject to harmless and plain error review. And we don't simply throw harmless and plain error out the window in this kind of situation. And under plain error, as opposed to harmless error, you bear a burden, don't you, to show that he would not have been convicted under a properly instructed theory of guilt, which would have simply referred to the aiding and abetting charge. Don't you bear the burden on that? We do bear the burden, Your Honor. But it's very clear from Supreme Court precedent and this circuit's precedent that the categorical approach and modified categorical approach apply. The two possible predicates exist. The Runyon Court has held that, and Runyon cited Vann, which of course is this court's en banc decision, as well as in Bryant, where the court held the modified categorical approach, applies some section 924C, and then applied it in this exact way. And the categorical approach is its own thing. It's unique. It's like nothing else. So even on plain error in these cases, the courts don't look to the facts of the case, even on the third and fourth prongs, the prejudice prongs. And in Boykin, there certainly was sufficient facts to conclude that the convictions were unanswered. But I don't understand here with the aiding and abetting charge. The concern I have is that this went far beyond, his involvement went far beyond just conspiracy. And what happened here was a really shocking series. It was a robbing spree, and it was a very shocking series of armed robberies of food, land, grocery stores, and a Greensboro beauty salon, and a Brinks armored truck in High Point. And they were all armed robberies, and the offenses were very serious. And when you read through the transcripts of some of the trial, and the testimony of the four co-defendants, you recognize that Ali was involved in far more than just a conspiracy, that he was assisting or aiding and abetting in a very big way. Each of the four co-defendants who were cross-examined said that he was involved in this series of robberies extensively. And there was a cell site location data that placed him at the scene. And the defendants and their testimony is remarkably consistent on this point, that he knew about the firearms, and not only knew about them, which is an important thing for an aiding and abetting charge, but he actually provided firearms at the site of each robbery. He helped to plan the robbery. He provided weapons. He drove the co-defendants to and from the robberies. He brandished a shotgun at one of the robberies. And so I don't understand how you can say that he wouldn't have been convicted on the aiding and abetting charge, or he wouldn't have been convicted under a properly instructed jury. It seems that the evidence of aiding and abetting here is simply overwhelming, and the whole business of a categorical approach and the rest, that seems to me to go more to the presence of error. But that's conceded here, because it's simply well settled that a Harzak conspiracy is not a crime of violence. So categorically, applying the categorical approach, there was error. But that's conceded. But that's still under a line of these plain and harmless error of analysis applied, and I don't understand why the evidence here isn't simply overwhelming with regard to aiding and abetting, and the government's closing argument focused in on just the aiding and abetting evidence. So looking at the justice of the whole thing and his involvement here, isn't he an aider and abetter? Your Honor, I see my time has expired, but I'd be happy to answer the question. Yes, please. I've taken up a bit of your time, so I'd be happy to have you answer. Your Honor, the Boykin case is plain error review and applies the modified categorical approach, so that that is the proper case to look to. What happens when these two things intersect? It's not to look to plain error cases or harmless error cases where the error is factually based. Here, the error, as you suggested, as everyone agrees, uses the categorical approach. But you can't just sort of cast aside the categorical approach midstream in the plain error analysis. That would defeat the whole purpose of it. You have to faithfully apply it throughout the entire analysis. I don't understand how you get over the hurdle, though, that let's apply the plain error analysis and conclude there's error and the error was plain. Of course, sins had not been decided when this case was tried, and that's the one that made the conspiracy not a crime of violence. And so the court correctly instructed at the time the trial was going, this is plain error, and it's pretty clear that it's plain error. But the question now is what do we look at to determine what substantial justice is and whether we should note the error under the plain error standard? And in that case, we accept your argument that the categorical approach created an error, but somehow we have to then look at the trial and say had the error not occurred, would we have a different outcome or would justice have been different? And I think that's where Judge Wilkinson was questioning you really is when you conduct that analysis, it's irrelevant about what the law is now. The error is already there. The question now is what would have happened had we had a properly instructed juror? And your burden is to show that there may have been some difference or that justice would have been done better. And to do that, it doesn't help you to point out that this is a categorical approach. You have to determine that what would the jury have done if properly instructed. And I think then you're allowed to look at the record, aren't you? Your Honor, I don't believe you are. I mean, in the Fuertes case, which was also plain error review, and the error was that the jury was instructed that sex trafficking was a crime of violence under 924C, there's plenty of sufficient facts to find that force had actually occurred in that case. But the court did not look to those facts, just as the court should not look to the facts here on aiding and abetting. And instead, the court just found that because Section 924C conviction, he was convicted of 924C offense, that added five years to his sentence, which affected his substantial rights and warranted relief under the fourth prong. But what you're doing, if you take that view, you're essentially throwing overboard, in any case, the third and fourth prongs of the Alano inquiry. And what you're doing further is saying that an instructional error is a structural error. And, you know, we've had a good debate. The Supreme Court's got a question on this in Gary, and we've looked at it in Medley and everything. But the upshot of it is, and I refer to Judge Motz's recent opinion in Collins, which applies plain error right down the line, and also to our Robinson opinion, where there are two theories of guilt here. And Robinson said, you know, as Judge Niemeyer pointed out, what would the jury have done? And it deeply, it troubles me, because I don't think that the criminal justice system is perfect by a long shot. There's an awful lot that's wrong with it. But there's some things that are right about it, too. And, you know, without applying plain error and harmless error, you would have somebody, and this is what troubles me about it, you'd have somebody who a jury listened to and heard copious evidence about, and four co-defendants plus a variety of other evidence, just implicated this individual in a series of very serious and violent activities. Now, you wouldn't look at the record at all in determining whether something is a crime of violence or not a crime of violence, but we all concede correctly, I think, that a conspiracy count under the Hobbs Act is not a crime of violence. And we approach that categorically, and we are forbidden to look at the record to say, oh, well, in this conspiracy, it is a crime of violence. That's just out of bounds as an inquiry. But once you accept the categorical approach, and you say that this is not categorically a crime of violence, as we've said over and over, then you're justified in looking at the record under the third and fourth prongs of a line-out if we aren't just to scuttle the results of a very well-conducted trial where a very able district judge tried her best, and I think successfully, to make sure that a fair trial was had and justice was done. And that's the difficulty here. And I feel like that good advocates, which you are, deserve to hear from the bench the concerns which we have. And so I've taken up a bit of your time, and I want you to have a chance to respond, and we won't take off any time for you in rebuttal, but please tell me why my concern is misplaced. Thank you, Your Honor. I can certainly appreciate your concern, but a few things I think are helpful to remember, which is, one, Mr. Ali is still facing decades in prison for the remaining counts, even if you were to vacate the 924C convictions, many decades in prison. And certainly all the facts that Your Honor mentioned at the trial, the sentencing judge could consider in sentencing. He could get more time on the underlying counts. The government could ask for them to be run consecutively. So that's the first thing. The second thing is the rationale for the categorical approach was explained very clearly in Sims. So the court said, although the categorical analysis may be complicated, the rationale for it is simple and long established. If Congress has conditioned a statutory penalty on commission of an offense generally, rather than on specific acts, courts must consider the crime as defined, rather than the offender's conduct. So that was in the context of a 924C, of course, and that is what we have here. It's an added statutory penalty. So I just have to keep, you know, making the point. How do you distinguish Robinson and Collins? So I believe Robinson was about the use prong of 924C, which does not require the categorical approach. No, it was about two theories supporting guilt on a particular single count. And later one was found to be lawful and another was found to be not correct. That's what happened here. And they look at the record. The cases with the two theories that involve harmless error, those cases don't have the error. It does not require the use of the categorical approach. So once we're in the categorical approach world, we just can't look to the facts. And I see my time has gone way over. So I will, if Your Honor's content with me waiting to reserve the rest of my time for a rebuttal, that's what I'll do. Well, you have it before you retire. I want to ask Judge Niemeyer or Judge Thacker if they have any questions at all for you. If I do, I'll bring them up on rebuttal. Thank you. Judge Thacker, do you have something you'd like to ask? No, thank you. Not at this time. OK. All right. Thank you very much. And you have your time reserved for rebuttal. And we'll hear from Mr. Anman. May it please the court. Steven Anman for the United States. The court should affirm Mr. Ali's 924C convictions because under Supreme Court and this court's precedent, under plain error review, it's Mr. Ali's burden to show that he could not have been convicted of aiding and abetting the four robberies in this case. And given the central, direct, and substantial role that Mr. Ali played in each and every one of these robberies, that's simply something he cannot show. And second, the district court did not abuse its discretion in carefully considering and taking actions that the defendant requested to sequester the cooperating co-defendants from one another and allowing cross-examination of those individuals when they testified. The district court took a measured approach to ensure that Mr. Ali had a fair trial while also maintaining the security of the courthouse. And using the jury's time efficiently. Your Honor, I want to just mention and maybe just take off something that you said, Your Honor, Judge Wilkinson, with regard to instructional error is not structural error. And I think that instructional error is not structural error. Yes, Your Honor. And I think that's I think that is the lesson of Hedgepeth versus Polito from the Supreme Court, which the government cited in its brief. Essentially that the Ninth Circuit in that case, it was a felony murder rule. Excuse me, a felony murder case. And so you can't imagine a more significant verdict going against the defendant in which there were two alternatives for the instructions. There was one that was viable on the timing of his intent with regard to felony murder and one that was not. And the Ninth Circuit in Hedgepeth versus Polito said that structural error in essence. And so we don't even we're not even going to consider harmless error or plain error review. We're simply going to reverse this verdict because there were two alternative theories for for guilt that the jury was instructed on. And what the Supreme Court said, of course, in Hedgepeth versus Polito, it said, no, we do take into account a harmless error and plain error review in these types of cases. And that's something that, of course, this court adopted, I think, the following year. Robinson was a 2010 case in which his court said that Robbins had to show that not only that he could have been convicted under the erroneous use instruction, but also that he was not convicted under the properly instructed possession problem. And so in this case, just like in Robinson, just like in other cases, there was a proper instruction to this jury with regards to substantive Hobbs robbery, with regards to aiding and abetting. No one knew it at the time. One point I want to make, and that is that nobody here, at least, you know, my questions are not for one minute. Would I overturn the categorical approach? Because that is settled. But the categorical approach, as I think the Supreme Court has laid it out and our court has laid it out, addresses itself primarily to prongs one and two of the Alano inquiry in this instance. And it is important because in determining whether something is a crime of violence, and if it's not a crime of violence, there's no 924C conviction. So you have to determine initially whether there's a crime of violence, because as I say, if it is not a crime of violence, the case falls apart. But we use the categorical approach. We use the categorical approach. Nobody looked into it in deciding that Hobbs Act conspiracy is definitely not categorically a crime of violence. It just is not. That proposition is settled. And so I just really want to indicate that this is not an effort to overturn the categorical approach and to go fishing into records, because I would be the last one to go fishing into this record in order to try to undermine this very settled proposition that a Hobbs Act conspiracy is not categorically a crime of violence. There is an error here, and it is plain. But the question is whether that forecloses us from looking at what the facts of the case are forever after. And I think Supreme Court and circuit precedent is clear on that. And of course, Your Honor, I agree. When this case started, obviously, in January 2015, when we tried it, Johnson hadn't even been argued, much less decided. And it, of course, did not get decided until June of 2015. And then the parties in this case and all the parties in the Fourth Circuit did not know definitively that conspiracy to commit Hobbs Act robbery was not a crime of violence that could serve as a predicate for 924C until this court's opinion in 2019 and since. There's even a further development that was whether the categorical approach applied to 924C, because the counter argument was that you're charging the crime of violence along with the 924C, and the jury can determine that you don't need to look at it categorically. And there was a big debate on that. And that wasn't resolved until the court came out with Davis. And in Davis, they said it is categorical. And so now we don't look at whether the crime of violence in this case existed. It did. That supports the notion that conspiracy is not a crime of violence. And I think it's Judge Wilkinson noted that clearly gives the defendant the argument that there was error and that it was plain. And, Your Honor, the government is not contesting those two portions of the Alano test because it's clear. Yes, there is no question now that conspiracy to commit Hobbs Act robbery can no longer serve as a viable predicate for a 924C conviction. But, again, if that were the end all be all, as Mr. Ali suggested it is, this would just be automatic reversal. And so in any case in which this court or the Supreme Court was ever presented with two alternative excuse me, two alternate theories of guilt, one viable and the other not viable, it would be automatic reversal. There would never be a need to discuss any aspect of the record. And we know that that's not the case from Hedgpeth. We know it's not the case from Robinson. The government also cited the Niccolo court, this court's opinion in from 1999. One thing I want to point out to the court, too, obviously, we the government filed a 28 J letter recently. I think earlier this week that cited it's called Johnson. It's a case from September of 2020. And in that case, it was conspiracy to commit Hobbs Act robbery and substantive Hobbs robbery, aiding and abetting. And in that case, again, this court incorporated the test that this court always incorporates with regard to alternate theories of guilt. And the court ultimately affirmed there's another case that this court recently decided in December of 2019. Stewart, it's S.T.E.W.A.R.D. And in that case, once again, it was a conspiracy case and a substantive Hobbs case. The jury was instructed on both. And Mr. Stewart was convicted of the 924 scene in that case. The court noted it's an unpublished case, but I think it's helpful to consider this. The court noted that the conspiracy offense and the robbery offense are coextensive. And the conspiracy offense related solely to the robbery offense, because there's no reasonable probability that the result of the proceeding would have been different had the conspiracy offense not been listed as the underlying crime of violence to the 924 C charge. We conclude that there is no reason to vacate the 924 C conviction. And again, I think that the court can look at the evidence in this case and know that the conspiracy charge is coextensive with the aiding and abetting theory. In fact, I would submit to the court that the aiding and abetting theory of Mr. Ali's guilt is far more compelling even than the conspiracy case. The other thing I want to point out with regards to the facts in this case, there were obviously four cooperating co-defendants. But Judge Wilkinson, as you mentioned, in regards to some of the questions that you had, Ms. Gladden, there was historical self-cite analysis. And so it seems inconceivable that this jury could have considered the testimony of those co-defendants and convicted the defendant of conspiracy, but just assumed that he was not involved in the actual robberies in this case. Because the defendants, not only the cooperating co-defendants phones were at these particular robbery sites, but the defendants, Mr. Ali's phone was at each and every one of these robbery sites. And for three of those robberies, the two food lines and the Jenny's Beauty Salon, his phone appeared as the government had testimony from an FBI agent who conducted the analysis of the historical records. And as we argued to the jury, the defendant's phone for those three robberies was only ever at those locations right near the time of the robberies. And so the minutes before or minutes after the robberies is when the defendant's phone was there. With regard to the last robbery, the defendant was in the area of that bank in the day or two before we submitted because he was chasing that location for the Brinks robbery. But then, of course, his phone was there in the 45 minutes waiting up to the time that that Brinks robbery occurred. The last thing I want to point out, I guess, with respect to the facts on the aiding and abetting theory is with especially with regard to that last robbery, the Brinks robbery. Mr. Ali was accused of being a felon in possession of a firearm and the firearm he was accused of possessing was it was a Mossberg shotgun. And only Mr. Frazier was the only witness who testified as to Mr. Ali possessing that shotgun. And Mr. Frazier placed that shotgun in Mr. Ali's hand, not somewhere else, neutral and innocent. Mr. Frazier placed that shotgun in Mr. Ali's hand at the SunTrust Bank moments before that Brinks truck robbery. And the jury convicted Mr. Ali of possessing that Mossberg shotgun. So we can know with great confidence that the jury believed that Mr. Ali was not only there at that robbery, but took an extremely active role in what turned out to be an incredibly violent robbery. Because there was no testimony that the defendants fired shots, but the armored guards of that Brinks truck fired fired shots in broad daylight in a main thoroughfare in High Point, North Carolina. And as the judge noted in the sentencing, it was a miracle that no one was harmed in the course of that in the course of that robbery. So those, I think, are all the more reasons why this court should affirm on the plain error review with regard to the 924 C convictions. If I can just talk briefly about the sequestration argument that the council talked about initially. I would note, of course, for the court that Rule 615 is not self-perfection. In other words, witnesses are not excluded simply by virtue of being witnesses. They're only excluded under Rule 615 when one of the parties requested it. And I think it's important to look at the record in this case and to consider when exactly that happened. Because the evidence in this case, this trial ran from January the 5th through January the 9th. The evidence in this case was heard on January 5th, January 6th, and January 7th. And Mr. Griffin, who would have been the first cooperating co-defendant to testify, did not testify until that second day on January the 6th. By the time that Mr. Griffin testified on January the 6th, it was almost midday on January the 6th, and 10 witnesses had already testified. And it was at that point that Mr. Ali made his request to have those witnesses sequestered. Now, it would not have been a mystery to Mr. Ali to know that on January the 5th those four men were in the courthouse because the parties didn't know exactly how far we would get with jury selection, openings, and the beginning of evidence. And so he would have known at that point. And, of course, the government submitted a witness list to the court for use at trial. Mr. Ali could have made his sequestration request before trial. He could have made it on the first day of trial for certain. And instead, those four men happened to be at the courthouse on January the 6th, and that's when Mr. Ali made his request. And as the court's already noted, and as the government argued in its brief, Mr. Ali had a chance to have Mr. Griffin sent out of the courthouse entirely. But he decided that he wanted him to stay. And so the district court said that Mr. Griffin would then have to stick around for a short time. The district court did something that was very important, I think, in terms of this court's review of abusive discretion. The district court said, essentially, OK, if he is going to be here, she directed Mr. Griffin's attorney, who was present in the courtroom, to tell his client not to discuss his testimony. And Mr. Griffin's attorney, on the record, indicates that he had just told his client that, that he had already instructed him not to discuss his testimony with other witnesses. And so that is, frankly, as much as any court could expect to review a district court. It's not as if the district court threw up her hands and said, well, there's nothing I could possibly do about this. She did exactly what anyone in her position would expect her to do. She asked the parties if they could just go ahead and get rid of this witness who might contaminate the other witnesses. And second, she told that witness's attorney to tell him not to discuss his testimony. One of the things that the district court highlighted... You know, on the sequestration business, it's a difficult row to hoe, because before the trial, the government surely could get all four witnesses in the same room, talk with them, prepare them, go over their testimony, coordinate any discrepancies that were unexplained. And that's always done by good attorneys. And that's perfectly legal. So that the testimony, coordinated testimony itself, does not per se violate anything unless it's untruthful, of course, or made up. The real interest in Rule 615 is that when that witness gets into the courtroom and cross-examination, happens to break down one witness to say something else or another witness to recant. It's very important that the other witnesses not know of what happened in the courtroom. It's not with respect to substantive evidence. In this case, we have no evidence that one of the cooperating witnesses changed its mind or recanted or was broken down by cross-examination. So that it's very difficult in that circumstance to conclude that their coordinated testimony wasn't the product of normal trial preparation. And so that's why I think the burden that the defendant in this case would have to make, and I asked about this earlier, is to focus on some particularized testimony where the cross-examination uncovered a weakness or caused the person to change his mind. And it's important not to alert the other witnesses to that. But I don't think we had any suggestion that that happened. It didn't, Your Honor. It's really a theoretical concern that Mr. Ali had about these four witnesses. And the other thing I will note for the court, of course, is that these four robberies occurred in July of 2013, and this trial did not occur until January of 2015. And so almost a year and a half later, and so to the extent that there was opportunity, these men, one, certainly had one another's discovery. This was a case in which all the parties were entitled to discovery. The government prosecuted each and every one of these individuals. They would have been entitled to not only their own statements, but to the statements of their co-conspirators. And so as part of that discovery disclosure, and so they had discovery for some of these. A lot of these men were in custody from August of 2013 on related state charges. All right. Do you have anything further, Ms. Danman? I do not, Your Honor. I would ask that the court affirm these convictions. Let me ask my co-panelists if they have anything. Judge Niemeyer, Judge Thacker, do either one of you have any questions of Ms. Danman? That's fine. Thank you. I do not. All right. Thank you, Your Honor. Thank you, Ms. Danman. Ms. Gladden, let's hear from you in rebuttal, okay? Yes, Your Honor. Thank you. The government contends that our position is that there would be automatic reversal anytime there's alternate theories of guilt. And that is not what we're arguing, Your Honor. Certainly, Hedgepeth and that line of cases would govern errors where they're factually based. We are only arguing about the errors that require the use of the categorical or modified categorical approach. And even in that class of cases, Your Honor had mentioned structural error. We don't even think it's structural error because within the categorical approach analysis, under the advisory guidelines, for example, there may be instances where a sentencing court says we would oppose the same sentence based on the 3553A factors, regardless of the crime of violence analysis. And, of course, those facts are wholly separate from the error under the categorical approach. I think what we were saying is that if there was a reversal of the 924C conviction, where the facts and the record were this compelling and this strong, that it's hard to see how anything could be anything other than reversed. And so you have a situation where if we reverse onto facts which were this compelling, it's hard to imagine a case where we could do anything other than reverse. And so when it says it's a rule of automatic reversal, that would be true given this record. And that does lead you when you're talking about something being automatic, anything that leads you very clearly and definitely in the direction of finding something to be a structural error. We do believe that in the context of 924C, when there's clear consecutive time, that yes, that is the case. It would be required to be reversed. And that's exactly what the court said in Runyon. When you have two possible predicates, one of which does not qualify, we must vacate the conviction. It's that simple. And we think that this court is absolutely bound by Boykin and Fuertes, in which there were facts that existed that the courts could have looked to to find that the sentencing enhancements were justified or that the 924C conviction was justified in Fuertes. I mean, the evidence of force in that case is astonishing. But the courts didn't do that because those facts, of course, are forbidden under the categorical approach. And the court didn't just midstream in the plain error analysis, all of a sudden switch to a factual analysis because you just can't do that. So we really believe that those are the on-point cases that tell this court what to do when you have plain error analysis and the modified categorical approach. It's hard to see how you can say you can never switch from a categorical analysis to a consideration of the factual record when the prongs of Olano are so differently focused. The focus of the first two prongs of Olano is on a question of law and whether there was an error and whether it was plain as a matter of law. But the second prongs or the third prong and the fourth prong are factually based. The third prong talks about the substantial rights and substantial evidence. The fourth prong talks about whether the trial as a whole was a miscarriage of justice. So when you look at an inquiry like at Olano, you look at the first two prongs and you say, yeah, that's a matter of law. That's a matter for the categorical approach, absolutely. But then when you look at the second two prongs of Olano, you say, wait, that's a different focus. They're after something more, and that is to look at the trial and decide whether it was fair. So the first and second on the one hand and the third and fourth on the other hand are after different things. And that's where I think the precedents are going. And I think there's plenty of support for that proposition. Your Honor, I see my time has expired, but I'd be happy to respond. Why don't you make a concluding statement, Ms. Glenn? I always like to give counsel the last word. Thank you, Your Honor. In Boykin and in Fuertes, the additional time was the violation of the defendant's substantial rights. So surely here, 80 additional years, which could have been predicated on a conspiracy conviction that's now constitutionally void, would be a violation of substantial rights. And Boykin explained that the magnitude of that error cries out for relief and was a miscarriage of justice. So surely the same is true here. The cases that government counsel mentioned, Johnson and Stewart, are unpublished cases and conflict with this court's precedent and don't address the categorical approach argument. So we'd argue that the 924C convictions must be vacated based on Runyon and all the categorical approach precedent. Thank you very much, Ms. Glenn. We appreciate it. And thank you, Ms. Denman. It's very unfortunate that we can't uphold a four-circuit tradition and come down and shake your hands and tell you how much we appreciate your service to the court. But both of you have done a very fine and able job, and I just want you to know how much we appreciate it and hope you have a pleasant afternoon and a nice weekend. Thank you very much. Thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Stephanie D. Thacker